in his official capacity as Secretary of Health and Human Services, Appellant, Ms. Utrecht for the Appellant, Mr. Parrish for the Affiliate. Ms. Utrecht, please proceed when you're ready. Good morning, Your Honor. Jennifer Utrecht on behalf of the government. Your Honor, this case is about Medicare, enhanced Medicare payments, which are calculated based on the number of days that a hospital treats patients who are eligible for Medicaid. In the words of the statute, the percentage of days who are eligible for medical assistance under a state plan approved under subchapter X1X, and Congress has further provided that in calculating this, the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients who are not eligible for medical assistance under a state plan, but who are regarded as such because they receive benefits under a demonstration project. Because this is a very technical statute, I think it's actually helpful to start here with what I think the points of agreement are to zone in on the points of disagreement. Everyone here agrees that the Secretary must include patients who are eligible for Medicaid under the terms of a state plan. Of course, you know, state Medicaid plans lay out the categories of patients who are covered by Medicaid and the types of services that will be covered by Medicaid. Everyone here also agrees that the Secretary may but need not include in this calculation the days of patients the Secretary regards as being eligible for Medicaid because they receive benefits under a demonstration project. There's a dispute sort of about how broadly this regarding language covers, but more critically, you know, the fact of the matter is that here, the Secretary has never regarded the patients at issue as being eligible for Medicaid. And that's really the heart of this dispute is whether, in fact, these patients have been regarded as being eligible for Medicaid in this calculation and whether the Secretary has permitted hospitals to include these patients. And so the answer to these questions, of course, is no. The section, or sorry, 42 CFR 412-106-B4 makes explicit that when calculating this Medicaid percentage, you calculate the number of patients who are, quote, eligible for Medicaid. And that for the purpose of this calculation, you are considered to be eligible for Medicaid only if you're eligible for inpatient hospital services. Whether this coverage is available under a state plan or a demonstration project, there's no distinction. You know, it's the same condition that applies in both circumstances. And the best reading of this, the one that is consistent with the text and the one that is consistent with the history of this regulation, is that the patient has to be eligible for Medicaid coverage, insurance coverage of inpatient hospital services. Can I ask you about, that's Roman at one. And I understand you're going to Roman on one, but then there's also Roman at two. And under Roman at two, the language speaks in terms of granting the hospitals. The hospital, it just says hospitals may include. So that's the language we have on the books that we take as a given. And I think everybody agrees or should agree that this means that hospitals may include something. And then the question is, what's the something that they may include? And what the provision says is all days attributable to populations eligible for Title 19. Maybe my Roman numeral is incorrect. I'm not sure. Matching payments. And is it is the government's argument that patients who are seen under a waiver approved, but who aren't Medicaid eligible, and who also don't have a card that gives them a substitute for Medicaid so that you're not treated as one step removed from Medicaid eligible, but still covered under a demonstration project, but as to which the hospital can get reimbursement from the state. The hospital can reimbursement for the care from the state that that person is not part of a population eligible for Title 19 matching payment. So. A few responses to the question, and I want to get to the heart of the question. And so there was a lot of facts there, some of which are relevant. And I think some of which are, but I think the heart of your question is, if the hospital is being reimbursed for a particular patient, and for particular services rendered to that particular patient, is that patient considered to be eligible? And my answer to that question is, if the demonstration project promises, the government will make payment to a hospital on behalf of a particular patient. Yes, that patient is eligible, but that's not the situation we have here. There's no promise to make payment on behalf of particular patients. Instead, what we have is a pool of money that is available to the state to be distributed to hospitals that have high uncompensated care costs. But this payment isn't made on behalf of any particular patient. It's not made on behalf of any particular services. Indeed, the amount of money that is available is capped. And so at a certain point, there's diminishing returns. The more patients the hospital treats, the less money per patient the hospital will get. But there's still some money for each patient. I mean, you could just get the fraction down to one one millionth or something, but there's still going to be some money for each patient, as I understand the mechanics of how the state actually operates it. To be clear, Your Honor, the money is not reimbursement for a patient. It's reimbursement for the hospital's cost. And, you know, that is a distinction that for these purposes matters because this is a statute and a regulation that focuses specifically on the patient's eligibility at the time of treatment. And that's a distinction that has mattered in other cases as well, you know, in ADENA and other courts of appeals, when the question is, is the patient eligible? You keep saying patients, and I know that that's in Roman at one. Roman at two. It's just the language is confusing to me because it speaks in terms of populations eligible for title. Is 19, right? Is that what it is? I don't even know. I appreciate the confusion, and I think taking a step back and reminding this court about the history of how this regulation was promulgated helps understand why it breaks down this way. So, of course, in 2000, Roman at two was actually the first version of this regulation. In 2000, Roman at two was promulgated by the secretary. And at that time, or rather prior to that time, no patient that received benefits under a demonstration project could be included in this calculation. And it was not until this regulation was promulgated in 2000 that the secretary said for the very first time, if, you know, the benefit you're receiving is met by a federal matching payment, that that patient can be included in the calculation. And then in 2003, Roman at one was promulgated and Roman at one was seen as sort of a drawback from the full breadth of Roman at two. And specifically in the federal register publication, secretary said, originally, we said, every person who has matching payments can be included, but it's come to our attention. But there are some demonstration projects that grant Medicaid coverage for sort of limited, discrete services, things like family planning, things that aren't the full breadth of coverage that's traditionally available to patients. And it's only when there's coverage of inpatient hospital services that resembles that which is available to traditional Medicaid beneficiaries, that we will regard you as being eligible for Medicaid for the purpose of this calculation. And so, you know, logically, the way this breaks down is, there are two questions here. One, are the patients regarded as eligible for Medicaid for the purpose of this calculation? And two, if so, has the secretary elected, because of course the secretary has discretion, has the secretary elected to include them? And so Roman at one answers the first question, are they regarded as being eligible for Medicaid? And Roman at two answers the second question, has the secretary elected to include them? But to be involved, should patients be included? So the background of this, as you say, is there's concern that some services under demonstration projects are too far disconnected from traditional Medicaid. And they write this regulation to address that problem. But in doing so, they drew two lines, which I think hurt the government here. One is that the key question, and you highlighted this language, is eligible for inpatient hospital services, right? So inpatient hospital is one category, family planning, et cetera, is a different one. And this demonstration project extends to medical assistance as defined in Medicaid. And Medicaid defines medical assistance to include inpatient services. So you have people under this project getting inpatient services. And then your next point as well, but you don't know, no particular patient is entitled. They might not get 100 cents or 80 cents on the dollar. It's all sort of generalized and amorphous. And as to that point, the reg says that the key is eligibility as opposed to whether particular items or services were covered or paid under the demonstration plan. So QED. Well, Your Honor, I think that critically, everything you just said started with the assumption that these patients received medical assistance and received inpatient hospital services. And that's not true. And that's the part here that, like, we are disputing. Okay. So walk me through that. Because the term healthcare expenditures as defined under Medicaid. Right. So the term and condition that you're referring to is for the low-income case. Low-income pool says that hospitals can receive money from the pool up to the total amount of their uncompensated costs. And uncompensated costs, of course, are defined with respect to a limited subset of healthcare expenditures. And when it says healthcare expenditures that would be medical assistance, what that means is elective surgery, for example, is not the kind of thing that Medicare would ordinarily cover because elective surgery is not the kind of healthcare expenditure that would be medical assistance. And so if a hospital had uncompensated costs related to elective surgery, that sort of thing couldn't be covered. But remember here, we have a well-established understanding, at least with respect to state plans, of what medical assistance means and what eligibility for medical assistance means. There's a long history with respect to Medicaid dish payments where there's money available under Medicaid state plans that is distributed to hospitals and indirectly subsidizes the cost of providing treatment to uninsured patients or underinsured patients. And hospitals have, in Adena, in Owenboro, in the Sixth Circuit, in a long list of courts of appeals cases, hospitals have tried to assert that because they're getting this Medicaid money under the state plan and because the amount of money they get under the state plan can be tied to patients that are uninsured, we should treat these uninsured patients as if they were eligible for Medicaid. And that's exactly what's happening here. It's the same type of money. The only difference is that this money is made available under the terms of a demonstration project rather than a state plan. But that's a distinction without difference because the same, you know, the regulation outlines exactly who is to be included in this calculation and it does not draw a distinction between who is to be included under the demonstration project, the D1 rather. It doesn't draw a distinction between who is to be included under the demonstration project versus the state plan. Inpatient hospital services have to mean the same thing with respect to a state plan as it does with respect to a demonstration project. And the hospital physician here turns on their erroneous assumption that the phrase inpatient hospital services means something different when it's a demonstration project rather than a state plan. Why is that? Can you just explain that a little more? I didn't follow it up. So, Your Honor, so the regular nuance says that you are eligible for Medicaid if you are eligible for inpatient hospital services under either state plan or demonstration project. And it gives two very specific alternatives. One is the approved state Medicaid plan under Title 19. And the other is a waiver authorized under Section 1115, which is the demonstration project. Yes, Your Honor. And, of course, you know, the critical question here is, is this type of payment, by making this type of payment available, is that making someone eligible for inpatient hospital services? And we know that if this type of payment is available under a state plan, it does not make someone eligible for inpatient hospital services. Are there patients under this demonstration project who get inpatient hospital services and the hospital provides it under the lid and then gets reimbursed by the federal government? Your Honor, there are patients who get treatment in hospitals, but treatment is not what inpatient hospital services means. And that's, I think, the point I'm trying to make. That's what I'm not getting, right? Inpatient hospital services seems like it's an intuitive concept, right? It's what's covered in Part A of Medicare. It's a term that's referenced in one of these definitions in Medicaid. And it's the term, it's one of the key terms in this regulation, inpatient hospital services. And it's in the context of a statute that statutory scheme that doesn't require comprehensiveness. Yes, Your Honor, it is the key term. And respectfully, it is a key term that has long been understood to mean Medicaid insurance coverage of inpatient hospital services. And these patients did not have that, right? These patients, the demonstration project very clearly lays out who is eligible for Medicaid under the demonstration project. And it doesn't, these patients were not included in any category of patients that is eligible for Medicaid under those terms. In addition, this money, the patients have no ability to be notified when their bill is paid. When they get their treatment, the hospitals can still continue to try and pursue the patient for payment. And even if the hospital ultimately gets money from the uncompensated care pool from the lip here, the hospital can still continue to pursue patients for treatment. So that seems to me to be the key. And that's why I went to Roman at two, because under Roman at one, I'm not sure this gets you home, but I understand your argument, which is that to me, it doesn't seem like inpatient hospital services is doing the work necessarily under your view of the world. It's that it's eligible is doing the work because what you mean by eligible is that the patient's actually covered by something so that the hospital can't go after the patient anymore. What the hospital has to do is go after the insurer, which is Medicaid or effectively Medicaid under a demonstration project. So the hospital is going after some other pot of money, not after the individual. And what you'd say is under Roman at one, when the patient is not eligible for inpatient hospital services under a demonstration project, even if they show up at the hospital, and even if they are given inpatient services, they're still not eligible under a demonstration project. Unless the hospital can actually go after them for the cost of care. And under a demonstration project, as you conceive of it, the hospital can't. So I think I think I understand at least rather under this demonstration project. There certainly are demonstration projects expand Medicaid eligibility. This one is not right. I get it. So there's two different types of demonstration projects in your old view. One is where it actually expands Medicaid coverage so that the person is treated as covered under Medicaid, even though they're not within the square parameters of traditional Medicaid eligibility. But what the demonstration project does is expand that field of individuals, we can call it expanded population, that they're covered, they have a card, they go in, the insurance picks up their care, the hospital can't go after them individually for the cost of care. Then there's the other type of demonstration project where the hospital gets reimbursed for giving them care in some measure, but the hospital can't go after the individual for the cost of the care. They can only try to get reimbursed. So I think I understand that. But what I don't completely follow is, and where the two parties are in disagreement is whether that distinction between those two categories of demonstration projects is one that's embedded in the regulation. Because I think what the hospitals would say no, both those categories qualify. And you would say no, only the one category where the individuals are actually covered qualify. Now as to that, under Romanet 2, it speaks in terms of hospitals, it gives hospitals entitlement to include all days attributable to populations eligible for Title 19 matching payments. And that language seems capacious enough to cover both types of demonstration projects. And maybe I'm looking in the wrong place, but that to me is in large measure where the rubber hits the road in this case. And it's interesting that Romanet 1 speaks in terms of the patient being eligible for hospital services, and Romanet 2 speaks in terms of the populations being eligible for matching payments. They're not even speaking with the same reference point because one's talking about being eligible for the matching payments, and the other one's talking about being eligible for the services. At the end of the day, I think that's a relic of how this regulation came to be and the fact that Romanet 1 was intended to be a limitation on Romanet 2. But I think logically, the best way to understand this is the statute says the secretary may include patients who are regarded as eligible for Medicaid under the demonstration project. Romanet 1 helps us understand who is regarded as being eligible for Medicaid under a demonstration project. And Romanet 2, if so, Romanet 2 says, so long as your eligibility for this type of Medicaid coverage is met with federal funds, it's not simply paid for exclusively by the state. Because the state could design a Medicaid program that paid for certain types of treatment, but there was no agreement between the federal government and the state. So can I ask the question this way then? Supposing the way I read Romanet 2 is as follows. It allows hospitals to include in the numerator all grades attributable to populations as to which Title 19 matching payments are available. If we look at it that – if we read it that way, then I think what the district court thought and what the Fifth Circuit thinks and what the hospital thinks is that, yeah, this population is covered. Because as to this population, Title 19 matching payments are in fact available to the hospital under a demonstration project. The hospital is going out, and as a consequence of providing care to these individuals, it's actually getting Title 19 matching payments under the auspices of a demonstration project. And therefore, Romanet 2 is satisfied. The hospitals are home. So the same logic as to why – under Romanet 1 as to why these patients aren't eligible for inpatient hospital services also applies here. The question here is whether the patient is eligible for this – matching payments, traditionally understood, is coverage that's – the coverage comes from the federal and state government cooperating and providing matching payments to cover your insurance. And so here, with respect to Romanet 2, the patients still aren't eligible – the patient isn't eligible because there's no coverage whatsoever. You know, the hospitals ultimately – there's a pool of money that's ultimately paid for by both the federal and the state government, and that money is available to hospitals. But the money is not tied to a particular patient or a particular patient's services. And the fact that that money isn't tied to a particular patient or a particular patient's services is critical when we're trying to determine whether the patient – because both of these prongs of the regulation are patient-focused – whether the patient is eligible under the terms of the demonstration project for these sorts of payments. Okay. Thank you. If my colleagues don't have further questions at this point, then we'll give Mr. Parrish a chance to go, and Ms. Sutrek will give us some time for rebuttal. Thank you, Your Honor. Mr. Parrish. Thank you, Your Honors. Ashley Parrish for the hospitals and police report. In light of what we've heard this morning, what I think would be most helpful is just to clarify and confirm, Judge Srinivasan, that we agree with just how you set out the statute and why that's the case. Then let me talk to the government's two textual arguments. Their one argument that there needs to be Medicaid coverage, meaning the trappings of traditional Medicaid. And second, their idea that there's a vested right, meaning that they read eligible to mean entitlement. Let me explain why both of those textual arguments are wrong. And then let me finish up by talking about the two cases that they cite most, the Adena case and the University of Washington. Because if you realize why those cases don't apply, you understand why the government doesn't interpret the statute and the regulations correctly. So let me just start off real quickly, Judge Srinivasan. You're absolutely correct that under the first part of the statute, when it says that patients are eligible for medical assistance under state plan, there's really two general requirements that apply there for medical assistance. And Adena makes this pretty clear. The first requirement is that it has to have federal matching funds. The whole point of it is that there is a Medicaid coverage because the federal government has agreed that the services and care that that patient population receives will be specifically matched with funds from the federal government. Not just that they're federal funds that might be used, but the federal government has specifically agreed to use matching funds. And then the second thing that often applies is that it's limited under the statute to eligible populations as defined in the statute. Now, the second part says, well, wait a second. They can also be counted if they are regarded as such because they receive benefits under a demonstration project. What that means is that it allows the secretary to look at new innovation programs that do different ways of charging or delivering care to new types of populations. That's the difference between under a state plan and under a demonstration project. If you look through the regulations, you're absolutely right to look at both Romanet 1 and Romanet 2. It says, is the patient eligible for inpatient hospital services under a waiver? That means basically a demonstration project. And then Romanet 2, hospitals may include all days attributable to populations that are eligible for matching payments, i.e., they're eligible for medical assistance. Are those requirements met? Yes, they are. The secretary approved the demonstration project. The patients received inpatient hospital services under that project. And the secretary specifically, and you can see this on appendix page 39, JA39, paragraph 111, which says that federal matching funds will be used to provide the services to this low-income pool. This is 111, and I should say it's sub 5 where you go down to that. So, Your Honors, this gets to the government's two arguments. Their first argument is that you can read that different than what the plain text suggests because they must be eligible for Medicaid coverage. And if you look at their brief, every time, instead of talking about inpatient services, they substitute the phrase eligible for Medicaid coverage. What do they mean by that? I mean, these patient populations are eligible for Medicaid coverage. It's not traditional Medicaid coverage. It's experimental Medicaid coverage. It's medical assistance that is provided with federal matching funds. Can I just stop you for one second there? So, I think everybody's on a common understanding in this respect, that it's true that there are demonstration projects that expand the field of coverage beyond what the Medicaid regulations and statute would otherwise allow for. But then there are two different types of demonstration projects. There's one type of demonstration project under which patients are given essentially individually expanded Medicaid coverage so that then the hospital can't go out to the patient. They still have to go out to insure a Medicaid for payment. But that person, you know, they have a Medicaid card. They wouldn't qualify ordinarily, but the demonstration project expands the field of coverage so that they can now qualify. And then there's another type of demonstration project under which we're not talking about the first type, but we're talking about a hospital being able to go to the state and get payment as reimbursement for supplying care to somebody who's not part of this expanded pool. But the state, I'm sorry, the hospital can still get payment from the state as reimbursement for providing care to them. And the issue in this case regards that second category demonstration project. And then the question is, everybody agrees that the first category demonstration projects is something that the hospitals can put in the numerator. The question is whether the second category of demonstration project is something that the hospitals can put in the numerator. And then that begs the question of where textually do you find a home for that piece of the demonstration project and where textually the government say, no, those types of payments are out. So, your honor, let me just say this is that I agree with you. There are lots of types of demonstration projects with different ways of delivering care. I want to be careful because your hypothetical is assuming a distinction that isn't built into the statute or the regulation. The point that so the government's idea of saying there must be Medicaid coverage is to suggest that there's a distinction. You're saying that there are some projects with patients that have cards and everything like that. And what they do is they then take that and you'll see in their brief, they talk about it as a vested right to the individual patient. And you'll see that closing counsel talks this morning about the particular patient receiving particular services. Right. So, can I just I think I think I understand this, but I believe that actually it's true that there are different types of demonstration projects that can be divided into these two categories. You may be right that legally, that's a distinction without a difference for purposes of this statute and these regulations. But I just want to and the government thinks that the factual distinction is also a legal one. So, your honor, there's lots of different demonstration projects that do different types of things. And you could have a demonstration project in category one and in category two. What I'm resisting is that those categories are not they're just made up by the government because. So, let me get to the second point is a lot of the argument here in the government's brief focuses on this idea. Look at the patient. Does the patient have a vested right? Does the patient have a card? Your honors, this is basically interpreting eligible in the statute to mean an entitlement. But if you take a look at the cases in 1994, 1996, the government litigated this argument five times and lost every time. That's the cabal case, the Jewish hospital case, the legacy hospital case, the deaconess case. And then all the cases that are cited specifically here where the courts are saying, no, eligible under the statute does not mean an entitlement patient. What it means is that you're eligible to be able to receive, which means you're part of the population that has the federal matching funds that will pay for your care if you get that care. So, the reason why I'm pushing back on your two categories is that in order to create those two categories to have any legal meaning, you have to first accept the government's argument that Medicaid coverage means it's got to look like traditional Medicaid with a card. The whole point of an experimental demonstration project is to allow a state to experiment with different ways of providing services and for the secretary to decide when he approves the demonstration project whether that's acceptable or not, which is what he did here. And then the second thing is that you don't look at individual patients. You look at patient populations. You don't look at vested rights because that's not in the statute. It's contrary to precedent. What you look at is are they eligible, which is why, Chief Judge Srinivasan, you're absolutely right to go focus back on Romanet II. And, Judge Kaptos, you're absolutely correct to take a look at the last phrase in Romanet I, which is precisely because of those cases back in the 1990s, the regulations were changed to make clear that it's regardless of whether particular items or services were covered under the state plan or the authorized waiver because the question is whether they're eligible to receive under the terms of the demonstration project. And Romanet II answers that question, Judge Srinivasan, because it specifically says hospitals may include all days attributable populations eligible for matching payments. That is exactly what happened here, which is that these patients, these LI, you know, the low-income pool Florida patients, they went into the hospital. If they received care, that care was matched by the federal government, and the federal government paid for part or portion of their care. And because of the demonstration project, they were eligible there for that experimental Medicaid coverage that they otherwise would not have been eligible to receive, and therefore they are regarded as such under the statute. They didn't – just to be technical, they didn't receive coverage, right? It's just that they received care, and as to that care, the hospitals got reimbursed through the demonstration project funding. Yes, Your Honor, but it is – That may be enough. I'm not necessarily suggesting that that doesn't get you home. I'm just trying to understand the factual context just to make sure I get where the flow of money is going. Your Honor, you're absolutely correct in terms of the mechanism. But the point is, at the end of the day, when the hospitals get federal matching payments, which is the key point of medical assistance, you see this under ADENA, Judge Ginsburg, your opinion lays out on it in ADENA, which was the key in there was that it was just charitable care that wasn't eligible for matching payments that the federal government had agreed to pay. What's significant about a demonstration project is that the federal government has specifically agreed that there will be federal funds that are matching and available for these services, so that when that patient gets the services provided and it ultimately gets paid to the hospitals, it is matched by federal funds for that defined patient group and for the inpatient hospital services they receive. Your Honors, if I could, I think it's really helpful now to take a look at the cases, the ADENA and University of Washington cases. You will note that the Fifth Circuit backhands those cases because they say, well, that has nothing to do with demonstration projects. It's only about state plans. Why is that significant? Why did the Fifth Circuit say that? Well, the reason the Fifth Circuit said that is to go back to the statute. Medical assistance under the statute, again, has two requirements in general. One is there has to be federal matching funds where the federal government has agreed to pay a portion or part of this care. And then two, it has to be an eligible patient group. What happens in the state plans that the government is relying on is that the states have taken some other pot of money. In that case, it's Medicaid ditch. It's not matching funds for medical assistance. It's just a federal pot of money, and they've reallocated it for charity care. And what the courts say in both of those cases is, one, that doesn't count because the federal government hasn't agreed to match for the medical assistance, actually pay for those services. And number two is that the eligible patient groups in those cases are limited by the enumerated patient groups in the statute. Those are the categorically and medically needed. So you can't expand the patient group under a state plan, and that's why they lose. The whole point is that what's not said in those cases, because it's not raised, is the states could have won those cases if, instead of expanding it themselves unilaterally under a state plan, if they had gone to the secretary, and the secretary had approved a demonstration project where it waived the requirements of limiting it to those eligible patient groups and expanded the population, which is exactly what happened here. Your Honors, seeing as I'm almost at the end here, let me just close with the following thoughts, because I think the court understands the different arguments. Every judge that has considered this issue has ruled against the government because the plain text of the regulation reads the way that we suggest, and what the government is trying to do is, after the fact, bring in new requirements that the regulations and statutes simply don't have. Accepting the government's position means that you have to read eligible not to mean eligible, as it's been interpreted by courts since the 1990s, but instead to mean entitled, that there's a vested right. That's not in the statute. The statute distinguishes between entitlement and eligibility, and every one of those cases we cite on page 22 of our brief and the number of cases they cite go against the government's position. And finally, the government's suggestion that this is just about traditional Medicaid and patients who are eligible for traditional Medicaid completely ignores the whole point of an experimental demonstration project, the whole idea that the secretary is allowed to waive requirements in order for states to bring in new populations of patients and treat them and regard them as if they would be eligible for Medicaid. And for all those reasons, the district court's well-reasoned decision here is correct, and we would urge this court to affirm. Thank you, Mr. Parrish. Ms. Utrecht, we'll give you three minutes for rebuttal. Thank you, Your Honor. I'd like to begin by addressing the Counsel's attempt to distinguish Adina and other cases. I think the critical point of those cases was missed in that distinction, which is that to be eligible for medical assistance, and again, inpatient hospital services is a subset of medical assistance. To be eligible for medical assistance, there has to be a promise by the federal government to pay for particular specified services on behalf of a particular patient. And the reason why the Medicaid dish money that was available in Adina versus Washington and similar cases was not, you know, the fact that that money was available to hospitals, it wasn't sufficient to make patients eligible for medical assistance, is because, you know, even though the hospital received more money for treating uninsured or underinsured patients, that money was available to hospitals specifically because those uninsured and underinsured patients were not eligible for Medicaid. And it was no promise to pay for those patients. It was simply helping to subsidize that cost, helping in supplemental income for the hospital. The hospital may have been eligible, but the patient was not eligible. What is the basis, I'm sorry, for your very first sentence? I recall correctly that payments can be made only with respect to particular patients. What is the basis for that statement? Sorry, you were a little quiet, Your Honor, I couldn't hear. I'm sorry. Well, the question is, what is the basis for what I think was your first sentence? Medicaid payments can be made only with respect to individual persons. So, Is that what you said? Why don't you restate what you meant? Well, so, you know, I'm directly quoting from, you know, this is specifically from Adina. It's from University of Washington in which the Medicaid dish payment was distributed exactly in the same manner as it is here, or, you know, distributed by the state to the hospital, rather than through additional Medicaid payments. Being eligible for medical assistance means eligible for payments for part or all of the cost of certain enumerated categories of care and services for individuals. And here, you know, we don't have a promise by the federal government to pay for part or all of certain specified services. There's a pool of money that's distributed to all health care providers in the state, and the state has chosen to allocate that money, you know, based on the provider's proportionate cost. But there's no promise to pay, you know, there's no promise that if a patient gets treatment, the state and the federal government will collaborate to pay for that patient's treatment in part or all. Are there demonstration projects in which that is the case? Yes, Your Honor. There are certainly demonstration projects in which there is a promise to make payment on behalf of patients. And, you know, these are demonstration projects, for example, where the state might say, traditionally, we cover, we provide, you know, the following services, and we will pay for the following services up to patients that have a certain income level. But on a temporary basis, we want to expand that and cover people who are above that income level. And so that would be expanded coverage. Those patients who are included in the demonstration projects above a certain level would certainly be eligible for inpatient hospital services, would be eligible for matching payment. But that sort of thing isn't an issue here. And, you know, because the payments here aren't tied to the patients in any way, and, you know, there was no agreement in the terms of the demonstration project to make these patients eligible for payment on their behalf. That's exactly why these patients are not eligible for inpatient hospital services under the terms of regulation. Thank you, Ms. Butrek. Thank you, Mr. Parrish. This case is submitted as well. This honorable court is now adjourned until this afternoon at 2.30 p.m.
judges: Srinivasan, Katsas, Ginsburg